DANIEL A. BYRKET v. LAKE SHORE & M. S. RY.

1. RIGHTS OF EMPLOYE USING TRACKS AS A CONVENIENT PATHWAY.

Where an employe of a railroad, while off duty, is directed to report at a certain place as soon as possible, and in complying with said direction walks along the tracks of the company as a matter of convenience and time saving, he is not within the course of his employment while on the said tracks, and the engineer of an approaching train is not bound to keep a lookout for him.

[For other cases in point, see 6 Cyc. Dig., "Master and Servant," §§ 292-411; 7 Cyc. Dig., "Railroads," §§ 1058-1061.—Ed.]

2. DUTY OF PERSON ON RAILROAD TRACKS TO OBSERVE AND AVOID DANGER.

If such employe, while using the tracks of the company as a convenient pathway to his place of destination, by the proper use of his faculties of hearing and vision would have had warning of an approaching train, the presumption arises, when he does not discover such a train and is injured by being struck by it, that he did not exercise due care; and the burden is on him to remove that presumption. And where no reasonable inference can be drawn from the evidence relieving him from that presumption and no claim is asserted that the engineer or others controlling the movement of the train had actual knowledge of his danger, it becomes the duty of the court to direct a verdict for the defendant.

[For other cases in point, see 6 Cyc. Dig., "Negligence," §§ 293-335; 7 Cyc. Dig., "Railroads," §§ 1080-1082.—Ed.]

3. DUTY OF RAILROAD AS TO PERSONS ON ITS TRACKS.

A railroad company owes no duty to an employe, or other person, who is using its tracks merely as a convenient path of travel, to give notice by bell or whistle of an approaching train or to run at any particular rate of speed.

[Syllabus approved by the court.]

ERROR to Lucas common pleas court.

**C. A. Thatcher,** for plaintiff in error.

**Potter & Potter,** for defendant in error.

## WILDMAN, J.

In this case which below was an action brought by Byrket for injuries claimed by him to have been sustained by reason of negligence of the defendant company, the plaintiff in error complains of the action of the court below in several respects. The one especially argued is the court's charge to the jury, at the close of the evidence in the case, to find in behalf of the defendant. Several of the other alleged errors are so closely connected with this that they may be treated as incidental to it, and our judgment is, that if the court was right in instructing

the jury to find for the defendant, the other alleged errors were not prejudicial to the plaintiff even if the court was in any one of its rulings in those respects in error.

The plaintiff, Byrket, had been for several years in the employ of the defendant company, sometimes acting as brakeman, sometimes in the capacity of conductor upon some of its trains, and I think at one time was known as a pony conductor or the conductor of a pony engine. At the time of the unfortunate occurrence which has been made the basis of this action, in which the plaintiff received severe injuries, he had been telegraphed to, while at Jonesville, Michigan, to come to Air Line Junction in Ohio, as soon as possible, and it was while proceeding to Air Line Junction that he received the injury for which he seeks damages. He had arrived at the Union Station in Toledo and then proceeded to walk along one of the tracks of the defendant company from the Union Station to Air Line Junction, and it is indicated by the evidence that he designed at some place along this line to take an electric car, but he concluded that he could arrive at Air Line Junction, his destination, more speedily and readily by proceeding along the track, and his claim is, that in doing this he was complying with the requirements of the defendant company; that he was in the discharge of his duty as an employe and that he had been instructed by the officials of the company that at all times when in discharge of the duties pertaining to his employment, he must keep upon the right of way. Our judgment is, that any such instruction was not to be construed by him so technically and that the general instruction that he was to proceed to Air Line Junction and arrive there as soon as possible, was to be construed according to its reasonable spirit and that he had a right to proceed by any ordinary means of safe transportation to the place of destination where he was required to report.

The principal question that is involved here requires some consideration of the nature of his duties while upon the defendant's right of way and track and of the correlative duties of the defendant company toward him while he was at the same place. He insists that his situation was much that of a person who would be at the time doing some work for the company and that it was the duty of the engineer upon an approaching train to keep a lookout for him while he was upon the company's track; and he attempts to fortify this claim by proof that it was a common custom for the employes of the company to use the track in that locality as a sort of a passage way from the Union depot to Air Line Junction while going to or from their work.

The plaintiff claims that at the time of this occurrence he was walking upon a track known as the "east-bound track" and that the engine

which struck him was coming from the east, moving westward, and the evidence shows those two facts. The defendant company had a right to move its trains upon whichever of these tracks it saw fit and in whatsoever direction it saw fit; it had the right, no matter what the tracks were called and no matter for what purpose it ordinarily used either one, to move its trains either east or west upon the so-called "east-bound" or the so-called "west-bound" track, although the circumstance that the engine was moving westwardly and upon what was usually treated as an "east-bound" track might be one circumstance, bearing upon the care due from the plaintiff and also might, under some circumstances, upon the asserted negligence of the defendant.

It is apparent from an examination of the numerous authorities in cases similar to the one at bar, that every case must stand almost upon its own footing, and it is not likely that we shall find cases that are upon all fours with one another, although counsel in argument assert oftentimes that one case is precisely like another in all its features. Much stress is laid by counsel for plaintiff in error upon the case of *Lake Shore & M. S. Ry.* v. *Ford*, 9 Circ. Dec. 786 (18 R. 239), which was decided by this court at the January term, 1899. The case has some features similar to those of the case at bar, but it has others dissimilar to the ones under consideration by us here. In the Ford case the comditions were such that the engineer of a train having knowledge of the fact that persons were accustomed to walk upon a track, was unable to distinguish persons upon the track until almost upon them; whereas in the case at bar there was no difficulty on the part of either the engineer or the man upon the track in discovering objects at remote distances. It is claimed, indeed, on behalf of the plaintiff in error, as one of the grounds upon which this judgment should be reversed, that he could see all the way from the point of injury to Air Line Junction, which was quite a distance away and that he was thereby apprised that no train was coming from that direction on the "east-bound" track, so that he had a right to conclude that it was safe for him to walk upon that track.

The conclusion must logically be drawn that if it was easy for him to see all the way to Air Line Junction, it was equally easy for him to see in the opposite direction, if he looked in the opposite direction at the time when the train that struck him was sufficiently near to manifest its approach. In his testimony there is an indication that he did look back about once every hundred feet, but in one part of his testimony he says that probably he went 150 feet from the time he last looked back before the engine struck him. Of course any statement of this kind is to be received and construed reasonably by the court. A man

Byrket v. Railway.

does not measure by paces the exact distance that he travels between the several times of using his faculties of observation, and it is probably impossible for the man to say how long a time had elapsed and how much distance he had traveled between one time of looking and another. But, however all this may be, it is manifest that if he had looked a sufficient time before he was struck to see the train's approach, there would have been no difficulty in seeing the danger and escaping the injury. There is nothing to indicate that he could not have leaped from the track if he had seen the train bearing down upon him. While it is claimed by the plaintiff that it would have been unsafe for him to walk upon either side of the track, or between the two tracks, by reason of certain circumstances which were given in evidence, there is no claim that in the immediate emergency of the train's approach, if it had been observed, he could not have escaped to a place of safety by leaping upon the other track or by leaping to one side, even into a ditch if necessary.

The court did not, apparently, arrest the case from the jury or charge the jury for the defendant upon the ground of any holding by the court that, as a matter of law he was guilty of negligence directly contributing to or causing his own injury. The court puts it upon the other ground: That the defendant company owed no duty to a man situated as he was and acting as he was, of giving him notice, by bell or signal of the approach of the train. A large part of the argument of counsel for the plaintiff, orally and in his brief, is based upon the theory that it was the duty of the company to keep the bell ringing upon the locomotive at all points in the progress of the engine and trains from the Union Station to Air Line Junction. Is this law? Was it the duty of the company to apprise persons walking upon its tracks of the approach of the train by giving signals by either bell or whistle?

In connection with the holding by this court in 1900, in *Lake Shore & M. S. Ry.* v. *Ford, supra,* my attention has been called by one of my associates to an unreported case of this court in the year 1903 or about that year. The case is that of *Ham* v. *Railway,* which was decided first in the court of common pleas of Fulton county, and the case there was arrested from the jury and the jury instructed to bring in a verdict for the defendant company. This court reversed the case, which is said by one of the judges—Judge Haynes—to have been very similar in its aspects to the case at bar. The case was carried to the Supreme Court, on error, and the Supreme Court reversed the circuit court and affirmed the ruling of the common pleas in its holding that the defendant company was not liable to such a duty as is sought to be imposed upon it here towards persons in a somewhat similar position to that which this plaintiff in error occupied at the time of his injury. The decision of the Su-

preme Court, which is also unreported, was rendered in June, 1903. In the following October—what is said to be the January term, 1903, on October 13—the Supreme Court rendered a decision in the case of *Erie Ry.* v. *McCormick,* 69 Ohio St. 45 [68 N. E. Rep. 571], which case we deem very analogous to the case at bar. It was a case of a man employed as a trackman, or track walker, for the defendant company, who was injured while engaged in walking upon its tracks; but whether in the direct discharge of his duty or not, does not appear clearly from the statement of facts reported. In the course of his traveling along the track, while in the discharge of his duty or going to or from his work, he had occasion to cross a bridge which was within the lines where he was required to work when he did work, as a track walker, exercising, I suppose, some duty of inspection of the track—that is, to see that everything was in order and free from obstructions or defects. In crossing this bridge on the occasion in question, he was struck by an engine and killed. Now, it is not claimed on behalf of the plaintiff in error here, Byrket, that his duty to the defendant company had any relation whatever to its track or required him to be walking upon the track, except in so far as he asserts a claim that he was necessarily upon the company's track in the carrying out of the injunction to stay upon the company's track when he was in the company's employment on duty and also when he was going to a place to which he had been directed to go as soon as possible. As I have already said, we think he had the right to construe that instruction reasonably and go by reasonably safe methods, and that it was not designed in the order that he should travel all the way from Jonesville or from the Union Station to Air Line Junction on the company's tracks, even if he could get to that place somewhat more speedily than by traveling some other route or in some other way.

It would seem that the case presented by the representative of McCormick was perhaps a stronger case, so far as this question is concerned, than the case at bar. McCormick's duties ordinarily related to the track, and if he was upon the company's track at the time of the colliding of the train with him and his death, in the direct discharge of his duties, then his case was stronger than that of Byrket, who was, at the best, but simply traveling along the track as a pathway to the place of his destination.

It is the judgment of this court, under all the circumstances of this case, that he does not stand in precisely the same position with reference to the transaction that Ford did in *Lake Shore & M. S. Ry.* v. *Ford, supra.* There are some circumstances here which would seem to have

Byrket. v. Railway.

made it easier for Byrket to have apprised himself of the danger than in the case just mentioned, and we think that a strong presumption of negligence arose; in other words, that the proper exercise of his faculties of hearing and vision would have notified him before his danger. The presumption arises when he does not discover that danger, that he did not exercise these faculties, and the burden is upon him to remove this presumption when it so arises. It is true that sometimes it is an inference which is to be drawn by the jury that he did discover the fact. But, on the other hand, there are numerous cases that where no reasonable inference can be drawn that would relieve him from the presumption, it becomes the duty of the court to say so to the jury.

In the McCormick case the court seems to assume that the plaintiff was in some fault in remaining upon the bridge, and then the court, so holding, goes farther and holds that the company was not negligent— that it was not held to the exercise of that sort of care toward him that it would have been compelled to exercise under other circumstances.

In the third paragraph of the syllabus, on page 45, it is said by the court:

"In an action against a railroad company by one who, by his own fault is upon its track and in a place of danger, to recover for a personal injury caused by the failure of its employes operating one of its trains to exercise due care after knowledge of his peril, it is necessary to show actual knowledge imputable to the company. *Cincinnati, H. & D. Ry.* v. *Kassen*, 49 Ohio St. 230, distinguished."

This leads me to call attention to the language of the petition which has been filed in this case, in which it is not clearly asserted that the engineer of the defendant company did in fact discover Byrket upon the track, and thereafter was guilty of negligence in not avoiding an injury to him. In one part of the petition it is said that:

"The action of said conductor and engineer *in so operating said train* was either wilful or so grossly negligent as to be wilful in its nature."

The pleader is speaking of the speed with which the train was run; that it was run at a high and excessive rate of speed and in violation of a certain ordinance of the city of Toledo, which provided that within the city limits the speed should not exceed six miles per hour. This question was also raised in the McCormick case: "That the speed of the train exceeded that limited by the ordinance of the city of Akron." With regard to the claim of excessive speed and also the claim that the speed was unlawful as being prohibited by ordinance, Judge Shauck, speaking for the court, says, page 52:

"The petition and all the evidence having shown that McCormick was an employe of the company, engaged as a track walker, there should have been no allegation in the petition as to the omission of signals for the neighboring road crossing or of the violation of the ordinance regulating the speed of trains, because, by the fact of his relation to the company, it was made to appear that he was not within the classes of persons for whom such signals are required to be given, or for whose protection the speed of trains is regulated. The omission of a duty does not constitute the foundation of an action unless it results in injury to one for whose protection the duty is imposed. This would seem to be elementary, and it is sustained by the decided cases."

And he then cites the two cases of *Baltimore & O. Ry.* v. *Depew*, 40 Ohio St. 121, and *Cleveland, A. & C. Ry.* v. *Workman*, 66 Ohio St. 509 [64 N. E. Rep. 582; 90 Am. St. Rep. 602].

Again, in this petition, it is alleged:

"That the engineer in charge of the engine drawing said train did carelessly, wrongfully and negligently fail to keep a proper lookout for persons who might be rightfully upon said track. That plaintiff was in plain view of said engineer for such distance as that said engineer did see plaintiff, or, by the exercise of ordinary care, could have seen him."

In other words, we are presented with an alternative by this pleader; there is no averment that the engineer did see Byrket, and if there had been such an allegation, there was perhaps no evidence that would have justified a finding that he did see him. But it is enough to say that the petition does not charge it. It is alleged:

"That said engineer carelessly, wrongfully and negligently failed to give plaintiff any warning of the approach of said train but ran the same in such manner as to strike plaintiff and throw him upon said track, and to allow said train to pass over him, inflicting injuries as hereinafter set forth."

Now, going back to *Erie Ry.* v. *McCormick, supra,* and resuming the consideration of the language of Judge Shauck, we find, on pages 52 and 53, he says:

"Passing to a consideration of the ground upon which counsel for the administratrix now insist that the recovery might have been sustained, the general inquiry is, whether it is in accordance with the law which defines liability for the wanton and wilful infliction of injury. The concrete rule upon the subject is, that if one is upon the track of a railway company by his own fault and in peril of which he is unconscious, or from which he cannot escape, and these facts and conditions are actually known by the engineer, it is his duty to exercise all reason-

Byrket v. Railway.

able care to avoid the infliction of injury. It does not impose the duty to exercise care to discover that one so upon the track is in a place of danger, but it does impose a duty to be exercised upon actual discovery. No matter if the rule did originate in considerations of humanity, it is an established rule of the law which does not unreasonably interfere with the rapid movements of trains, nor is it ordinarily difficult of application, if earnest and impartial efforts are made to apply it according to its terms and obvious import. With respect to the ground of liability now considered the court instructed the jury that the company would be liable if the engineer ought, by the exercise of ordinary care, to have seen the deceased in his perilous position and could, by the exercise of ordinary care, have stopped or checked the speed of the train so as to avoid the collision. Notwithstanding the manifest conflict between the instruction given and the rule, it is said that the instruction is authorized by *Cincinnati, H. & D. Ry.* v. *Kassan,* 49 Ohio St. 230 [31 N. E. Rep. 282; 16 L. R. A. 674].''

Now in the brief of counsel for plaintiff in error, before me, some consideration is given to *Cincinnati, H. & D. Ry.* v. *Kassan, supra,* and emphasis is put upon the language of the court in that case holding the company to a knowledge which ought to have been had by the persons in control of the train which caused the injury; but a careful consideration of the reasoning of Judge Shauck in the case in *Erie Ry.* v. *McCormick, supra,* clearly evidences that a proper construction of *Cincinnati, H. & D. Ry.* v. *Kassan, supra,* will not bear the interpretation which is sought to be put upon it by the counsel for plaintiff in error here. Kassan had fallen from the rear platform of one of defendant's trains. The company was running two trains, in the same direction, about two hours apart. This injury disabled him from leaving his position of danger upon the track, and while in that dangerous position he was run down and killed by the following train. That Kassan had fallen from the train and was in a place of danger, were facts actually known to the employes of the defendant company operating the forward train. There was ample opportunity to rescue him either by stopping the train from which he had fallen or by using the telegraph to communicate information of his situation to those in charge of the following train. The actual knowledge of the employes of the company in charge of the forward train was the company's knowledge and that knowledge ought to have been communicated to the engineer of the following train, so that it may be said that it was a knowledge which he ought to have had; but that is not saying that it was the negligence of the engineer in charge of the train; it was the negligence of the company itself in not com-

Lucas County.

municating to him the information which he ought to have had so that he might thereby have saved his train from killing or injuring Kassan. Judge Shauck goes further and says:

"The phrase 'ought to have been aware' manifestly applies to those in charge of the following train, and implies the duty of the company to communicate to them its actual knowledge of Kassan's danger. This is entirely clear, not only from the peculiar facts of the case, but from the language of the opinion."

I will not stop to read more. It is clear enough from what I have already read that the construction which is placed upon *Cincinnati, H. & D. Ry.* v. *Kassan, supra,* in the brief for plaintiff in error is not the construction which should be properly drawn from it. We think that the circumstances of *Erie Ry.* v. *McCormick, supra,* are so similar to those in the case at bar that, if this case had been permitted to go to the jury, no verdict in behalf of the plaintiff in error, or judgment thereon, would have been permitted to stand by the Supreme Court, if the case ever reached that court of last resort, because of the principles which are in *Erie Ry.* v. *McCormick, supra,* so clearly enunciated. And it is against the previous rulings of this court, which it is not necessary to further consider; it is enough to say that the last enunciation of the Supreme Court to which our attention has been called, or which we have found in our examination of the questions, leads along the line of the holding at which we have arrived in this case, that the judgment of the court below must be affirmed.

**Haynes** and **Parker, JJ.,** concur.